UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZIONS FIRST NATIONAL BANK,

    Plaintiff,

                                                  Case No. 08-10528

v.

MOTO DIESEL MEXICANA, S.A.,                    Hon. John Corbett O'Meara
DE C.V.,

    Defendant.
_____/

## OPINION AND ORDER DENYING MOTIONS TO DISMISS

Before the court are Defendant's motions to dismiss pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), and forum non conveniens, all filed on April 18, 2011. Plaintiff filed responses on May 17, 2011. Defendant submitted reply briefs on May 31, 2011. The court heard oral argument on June 9, 2011, and took the matter under advisement. For the reasons stated in this opinion, Defendant's motions are denied.

## BACKGROUND FACTS

Plaintiff Zions First National Bank is a national banking association with its principal place of business in Salt Lake City, Utah. Defendant Moto Diesel Mexicana, S.A. de C.V. ("MDM") is a Mexican company located in Aguascalientes, Mexico. Plaintiff alleges that in December 2007, MDM wrote eight checks payable to Zions Bank customer Casa de Cambio Majapara S.A. ("Majapara"), which is also located in Mexico. The MDM checks were drawn on its checking account at Comerica Bank in Detroit, Michigan. Majapara electronically deposited the checks, which totaled $2 million, into its account at Zions Bank. Zions Bank sent the checks out for collection to Comerica. In the meantime, Zions Bank granted Majapara provisional

credit for the checks; Majapara withdrew the full amount from its Zions Bank account.

Thereafter, Comerica returned the checks to Zions Bank unpaid because there were insufficient funds in MDM's account. Majapara's account was left with an overdraft balance and Zions Bank suffered a loss in the amount of $2 million. Unable to collect from Majapara, who has filed for bankruptcy, Zions Bank has filed a complaint against MDM as a holder in due course of the checks.[1]

## LAW AND ANALYSIS

### I.   Service of Process

MDM contends that it was not properly served with process. On May 2, 2008, the court appointed APS International Ltd., as special process server. APS endeavored to serve MDM in compliance with the Hague Convention. See Fed. R. Civ. P. 4(f). On June 9, 2008, APS provided English and Spanish versions of the summons, cover sheet, complaint, and LR 83.11, as well as the necessary Hague Convention request forms to the Mexican Central Authority ("Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos, Direccion de Asistencia Juridica Internacional"). See Affidavit of Lester L. Franzen, Docket No. 10-9. The Mexican Central Authority forwarded the documents to a Mexican court, which authorized a process server, Antonio Gomez, to serve MDM. Gomez provided a certificate of service stating that service upon MDM was completed in accordance with the laws of Mexico. Id. at ¶ 10. Zions filed the certificate of service on February 12, 2009.

Federal Rule of Civil Procedure 4(f)(1) allows service of process of foreign companies

---

[1] Zions filed an amended complaint on February 16, 2011, containing one count based on its status as a holder in due course of the checks. Zions voluntarily dismissed its conversion and *quantum valebant* claims.

"by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." The Hague Convention requires each country to establish a central authority to receive requests for service of process. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988). The central authority then serves the documents in accordance with the law of that country. Id.

MDM does not contend that it did not receive the complaint or actual notice of this suit. Rather, MDM contends that it was not served in accordance with the law of Mexico, because the court that authorized service did not have jurisdiction over it and because it was not clear whether the 20-day response time provided was to be calculated in business days or calendar days. The court rejected similar arguments in Unite Nat'l Retirement Fund v. Ariela, Inc., 643 F. Supp.2d 328, 334 (S.D.N.Y. 2008). In Ariela, the court determined that the certificate of service filed with the court "establishes a prima facie case that this service complied with Mexico's internal laws. By not objecting to the documents and by certifying service, the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Mexican law required. This Court declines to look behind the certificate of service to adjudicate issues of Mexican procedural law that the parties have raised through their submission of conflicting expert statements on the issue." Id. (citing Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, 51 F.3d 1383, 1390 (8th Cir. 1995)).

Similarly, in this case, the Mexican Central Authority certified that service was completed in accordance with the laws of Mexico. See Affidavit of Lester L. Franzen at ¶ 11-12.

Courts have "consistently held that the Hague Convention should be read together with Rule 4, which stresses actual notice, rather than strict formalism." <u>Ariela</u>, 643 F. Supp.2d at 335 (citations omitted). "Thus, where the plaintiff made a good faith attempt to comply with the Convention, and where the defendant received sufficient notice of the action such that no injustice would result, it is within the Court's discretion to deem service of process properly perfected." <u>Id.</u>

Although a prima facie showing of proper service may be rebutted by a lack of actual notice or some showing of prejudice, MDM has not made such a showing here. <u>See id.</u> at 335; <u>Northrup</u>, 51 F.3d at 1390. MDM has neither disputed that it received actual notice nor has it articulated any prejudice. Accordingly, MDM's motion to dismiss for lack of proper service will be denied.

## II.     **Personal Jurisdiction**

MDM also claims that this court lacks personal jurisdiction over it. Personal jurisdiction can be general, where the defendant has continuous and systematic contact with the forum state, or limited (also known as specific), where the subject matter of the lawsuit is related to the defendant's contacts with the forum state. <u>See</u> <u>Sports Auth. Mich. Inc. v. Justballs, Inc.</u>, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (Woods, J.). In Michigan, courts have general jurisdiction over a corporation when it incorporates under Michigan laws, consents to be sued in Michigan, or carries on a "continuous and systematic part of its general business within the state." M.C.L. § 600.711.

In analyzing specific jurisdiction, the court must engage in a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the

exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007).  See also Green v. Wilson, 455 Mich. 342, 350-52 (1997).  Plaintiff argues that the applicable long-arm statute is satisfied because MDM has conducted "[t]he transaction of any business within the state." M.C.L. § 600.715 (corporations; limited personal jurisdiction).  To the extent this provision is satisfied, an exercise of personal jurisdiction over MDM also must comport with due process.

Three criteria must be met to satisfy due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1299 (6th Cir. 1989) (quoting Southern Machine Co. v. Mohasco Indus. Inc., 401 F.2d 374, 381 (6th Cir. 1968)). The first criterion – a showing that the defendant has "purposefully availed itself of the privilege of transacting business" in the forum state, thus invoking the benefits and protections of its laws – is "the *sine qua non* for *in personam* jurisdiction." Id. (quoting Mohasco, 401 F.2d at 381-82).  The "purposeful availment" prong is satisfied by the "kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws' as opposed to a mere 'collateral relation to the forum state.'" Id. (citations omitted).

MDM argues that neither general nor personal jurisdiction exists, as it has no employees or offices in Michigan.  MDM contends that it has had only "limited" contacts with Michigan,

consisting of sales to Michigan companies (such as Delphi, Detroit Diesel, and Visteon) of parts that were delivered to locations outside of Michigan.  MDM avers that these sales represented a small percentage of its total business in 2005, 2006, and 2007.  MDM also purchased goods from Michigan companies; again, it contends that these purchases constituted a small percentage of its total purchases in the years 2006 and 2007.  MDM has not provided information regarding its Michigan sales and purchases from 2008 to the present.  MDM does maintain a bank account in the state through Comerica Bank.

It is not clear, based upon the amount and age of the figures given, whether MDM conducts a "continuous and systematic" part of its business in Michigan so as to support a finding of general jurisdiction.  It appears that it does.  More certain, however, is that MDM has sufficient minimum contacts with Michigan to make the exercise of limited personal reasonable.  MDM conducts business, through the use of its bank account, to satisfy the "transaction of any business within the state" prong of the long-arm statute.  See Oberlies v. Searchmont Resort, Inc., 246 Mich. App. 424, 430 (2001) ("Our Legislature's use of the word 'any' to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction.").  MDM "purposefully availed" itself of the privilege of acting in Michigan by opening and using a Michigan bank account.  In addition, Zions's cause of action arises out of MDM's activities in the state, in that MDM wrote checks from its Michigan account and Zions claims to be a holder in due course of those negotiable instruments.  When the first two due process criteria are met, an inference of reasonableness arises, such that "only the unusual case will not meet this third criteria." Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991).  It is not unreasonable

for MDM to expect to come to Michigan to defend a lawsuit related to the bank account that MDM voluntarily opened here.

The court finds that it has limited personal jurisdiction over MDM and denies its motion to dismiss on that basis.

### III.     Failure to State a Claim

MDM contends that Zions's holder in due course claim fails because it never actually possessed the checks at issue.  MDM wrote the checks to Majapara, who sent electronic copies of the checks to Zions.  Zions responds that it need not have actual possession of the checks to be a holder in due course under the UCC.  See Georg v. Metro Fixtures Contractors, Inc., 178 P.3d 1209, 1213 (Colo. 2008) (noting that several jurisdictions recognize "constructive possession" under the UCC).  Further, Zions states that the electronic checks deposited with the bank were "substitute checks" authorized under the Check Clearing for the 21st Century Act ("Check 21 Act"), 12 U.S.C. § 5001 et seq.  The Act specifically provides that this "chapter shall supersede any provision of Federal or State law, including the Uniform Commercial Code, which is inconsistent with this chapter, but only to the extent of the inconsistency." 12 U.S.C. § 5012.

MDM argues that Zions has not provided evidence that the substitute checks met the requirements of 12 C.F.R. 229.51, which provides that substitute checks must accurately represent all information on the front and back of the original check and must bear the legend, "This is a legal copy of your check.  You can use it the same way you would use the original check." Id.  Because MDM raised this argument for the first time in its reply brief, the court declines to consider it.  See Sundberg v. Keller Ladder, 189 F. Supp.2d 671, 682-83 (E.D. Mich. 2002) ("[I]t is not the office of the reply brief to raise issues for the first time.").  Moreover, this

appears to be an issue more appropriate for summary judgment, as Zions is not required to present evidence to survive a Rule 12(b)(6) motion. Rather, Zions's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Zions's complaint sufficiently states a claim for relief as a holder in due course. The court will deny MDM's motion.

## IV.     Forum Non Conveniens

Originally, this court dismissed this action on forum non conveniens grounds, finding that the only connection to Michigan was that MDM had bounced checks drawn on its Michigan Comerica account. The Sixth Circuit reversed and remanded, finding that the court did not give enough deference or consideration to the Plaintiff's choice of forum and whether the forum would be oppressive or vexatious for Defendant. The Sixth Circuit also found that the court did not conduct a separate analysis for each of Plaintiff's claims; this issue is largely moot because Plaintiff dropped two of its original claims in favor of its holder in due course claim.

The doctrine of forum non conveniens is essentially "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." American Dredging Co. v. Miller, 510 U.S. 443, 453 (1994). A district court "must apply a strong presumption in favor of a plaintiff's selected forum, particularly if the forum is the home of the plaintiff, because 'it is reasonable to assume that this choice is convenient.'" Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A., 629 F.3d 520 (6th Cir. 2010).

> When the plaintiff's choice of forum, however, is not the home of
> the plaintiff, the normally applicable assumption that the forum

-8-

>choice is convenient carries significantly less weight. Nevertheless, "[t]his lesser standard of deference should presumptively not apply to a U.S. plaintiff's choice of forum." Instead, "[i]n general, the standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to a plaintiff's convenience, which may be shown to be slight or nonexistent."

Id. (citations omitted).

The first step in the forum non conveniens analysis is establishing that an adequate alternative forum exists. Estate of Thomson v. Toyota Motor Corporation Worldwide, 545 F.3d 357, 364 (6th Cir. 2008) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.22 (1981)). "The second step requires a balance of private and public factors listed in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947), superseded on other grounds by 20 U.S.C. § 1404, to determine whether a trial in plaintiffs' chosen forum would be unnecessarily burdensome for the defendant or the court." Id. The private Gulf Oil factors include:

>[The] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gulf Oil, 330 U.S. at 508. The public factors include:

>[C]ourt congestion; the "local interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gulf Oil, 330 U.S. at 509).

### A. **<u>Adequacy of Alternative Forum</u>**

Plaintiff argues that Mexico is not an adequate alternative forum. The requirement of an available and adequate alternative forum is ordinarily "satisfied when the defendant is 'amenable to process' in the other jurisdiction." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 n.22 (1981). However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." <u>Id.</u>

Plaintiff's cause of action here is based upon the Uniform Commercial Code, as adopted in Michigan, M.C.L. 440.1101 *et seq.* Accordingly, this court would likely apply Michigan law to this dispute. <u>See</u> M.C.L. § 440.1105(1) (UCC conflict of laws provision, stating that "[f]ailing agreement, this act applies to transactions bearing an appropriate relation to this state"). It is not clear whether a Mexican court would apply Michigan law (presumably with the aid of translations) or Mexican law. If Mexican law applied, it does not appear that Plaintiff would have a remedy. According to Plaintiff's expert, there is no equivalent to a "holder in due course" in Mexico because "payment of [a] check will only be made upon confirmation that the corresponding account has funds to cover the check in question." Declaration of David Marquez-Lechuga. Further, federal law (the Check 21 Act) authorizes the use of images instead of paper checks, and there is no equivalent under Mexican law. Indeed, MDM's legal expert has stated that "it must be notice that the transmission of a scanned image of a check is NOT, under Mexican law, a proper and legal endorsement and, hence, ZIONS is NOT a holder in due course in Mexico." Def.'s Ex. 8 (Opinion of Pablo Igartua Mendez Padilla) (emphasis in original). In light of this, it may be that a Mexican court applying Mexican law is not an adequate alternative

forum.

      B.     **Private and Public *Gulf Oil* Factors**

The court will nonetheless consider the ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses. See Gulf Oil, 330 U.S. at 508; Duha v. Agrium, Inc., 448 F.3d 867, 875 (6th Cir. 2006). With respect to the ease-of-access factor, MDM contends that the majority of relevant documents are located in Utah or Mexico. Significantly, however, the documents generally described by MDM as relevant are in MDM's possession. See Br. at ¶ 12. MDM has not articulated how the shipment of these documents to a U.S. forum would be unduly burdensome. See Duha, 448 F.3d at 876 (ease-of-access factor weighed in favor of U.S. forum because "most documents are in [the foreign defendant's] possession and the mere shipment of them to the U.S. forum in this case can hardly be vexatious or oppressive"). Further, MDM has not specifically identified documents relevant to Zions's holder in due course claim that it must compel Majapara to produce. Moreover, MDM has not specifically identified documents that are in Spanish that would need to be translated into English. See id. (discounting argument that many documents were in Spanish where the party "provided no record evidence substantiating this allegation"). Rather, it appears that the Bank's documents, which are primarily in English, would need to be translated into Spanish if this matter were to proceed in Mexico. The ease-of-access factor weighs in favor of a U.S. forum. See Duha, 448 F.3d at 877.

With respect to the availability of compulsory process for unwilling witnesses, this issue "is properly considered when witnesses are unwilling, [but] it is less weighty when it has not been alleged or shown that any witness would be unwilling to testify." Id. MDM argues that

compulsory process in Michigan is not available for representatives from Majapara, who are unlikely to testify willingly because of an ongoing criminal investigation of the company in Mexico. MDM has not identified by name any relevant witness from Majapara, let alone any such witnesses who are unwilling to testify. Duha, 448 F.3d at 878 ("[C]ourts considering dismissal for *forum non conveniens* have a duty to determine which witnesses 'are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.'") (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988)). Although the existence of an ongoing criminal investigation provides circumstantial evidence of a witness's unwillingness to testify, general allegations regarding unnamed witnesses are insufficient to satisfy MDM's burden here. See Zions, 629 F.3d at 526; Duha, 448 F.3d at 877 (movant is "obligated to provide enough information to enable the District Court to balance the parties' interests").

The court must also consider the cost of travel for willing witnesses and witnesses' "accessibility and convenience to the forum." Duha, 448 F.3d at 878. Again, although MDM contends that "all" of its witnesses are located in Mexico, MDM has failed to specifically identify any of its witnesses or establish their relevance to Plaintiff's claims or MDM's defenses. See id. at 878-79. It is unclear to the court, therefore, the number of relevant witnesses who reside in either Mexico or Utah and how to weigh the overall witness travel costs. Accordingly, MDM has not established that Mexico is more accessible or convenient than Michigan for willing witnesses. See Zions, 629 F.3d at 526 ("The fact that MDM's witnesses are in Mexico is a consideration, but less so given that the gist of this lawsuit is business activity of MDM in Detroit, Michigan.").

The public Gulf Oil factors also do not weigh heavily in favor of dismissal.  Court congestion is not a problem in this district.  As noted previously, Michigan law likely applies to Plaintiff's claim under the UCC.  Although Michigan is not Plaintiff's "home" forum, it appears to be the most convenient U.S. forum for the bank, and the court must give Plaintiff's choice deference.  See Zions, 629 F.3d at 525 (the court must "accord Zions the strong presumption in favor of its selection of the Eastern District of Michigan as the forum for this case").

In sum, the court questions whether Mexico is an adequate alternative forum.  Even if it were, however, MDM has not established that the public and private Gulf Oil factors favor dismissal.  Although it would certainly be more convenient for MDM to litigate this case in its home forum, it has not established "such oppressiveness and vexation . . . as to be out of all proportion to [Zions's] convenience, which may be shown to be slight or nonexistent."  Zions, 629 F.3d at 524.  Accordingly, the court will deny MDM's motion.

## ORDER

IT IS HEREBY ORDERED that Defendant's motions to dismiss (Docket Nos. 29-32) are DENIED.

> s/John Corbett O'Meara  
> United States District Judge

Date:  July 7, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 7, 2011, using the ECF system.

> s/William Barkholz  
> Case Manager